**In re GRAHAM, A Minor Child.**

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01–CA–92.

Decided May 17, 2002.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Robert J. Andrews, Assistant Prosecuting Attorney, for appellee and cross-appellant.

David H. Bodiker, Ohio Public Defender, and Lisa F. Thompson, Assistant State Public Defender, for appellant and cross-appellee.

GENE DONOFRIO, Judge.

{¶ 1} Jeremiah Graham appeals from the decision of the Mahoning County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child.

{¶ 2} On January 16, 2001, the Youngstown Police Department filed a complaint alleging that sixteen-year-old Jeremiah was a delinquent child for committing aggravated robbery with a firearm specification. On February 21, 2001, Jeremiah entered an admission to the charges pursuant to a plea agreement. In exchange, appellee, the state of Ohio, withdrew its motion to have Jeremiah bound over to the general division of the common pleas court. The court accepted Jeremiah's admission, adjudicated him delinquent, and set the case for a dispositional hearing. At Jeremiah's disposition hearing on March 26, 2001, the court sentenced him to the Department of Youth Services for one year on the aggravated robbery charge and three years on the firearm specification. The

court entered its judgment on March 27, 2001. This court granted Jeremiah leave to file a delayed notice of appeal, which he did on May 14, 2001.

{¶ 3} Jeremiah alleges a single assignment of error, which states:

{¶ 4} "The trial court committed plain error and violated Jeremiah Graham's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Ohio Constitution, by failing to satisfy the minimum due process requirements mandated by Juv.R. 29? [sic] (adj. Tr. 6–7)."

{¶ 5} Jeremiah argues that the trial court failed to follow Juv.R. 29 when it accepted his admission. He alleges that the court failed to explain to him the possible consequences he faced, failed to determine whether he was entering his admission knowingly, intelligently, and voluntarily, and failed to advise him of the rights he was waiving. Thus, Jeremiah asserts that we must overturn his adjudication of delinquency.

{¶ 6} Juv.R. 29 governs adjudicatory hearings. Juv.R. 29(D) provides:

{¶ 7} "The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

{¶ 8} "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

{¶ 9} "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."

{¶ 10} This court has held that Juv.R. 29(D) is somewhat analogous to Crim.R. 11(C)(2) in that both require the trial court to personally address the defendant on the record with respect to the rights set out in the rules. *In re Royal* (1999), 132 Ohio App.3d 496, 504, 725 N.E.2d 685. A juvenile court need only substantially comply with Juv.R. 29(D) before accepting the juvenile's admission. Id. If the court fails to substantially comply with Juv.R. 29(D), the adjudication must be reversed and the juvenile must be permitted to change his plea. Id.

{¶ 11} The best method for the trial court to comply with Juv.R. 29(D) is to use the language of the rule itself, "carefully tailored to the child's level of understanding, stopping after each right and asking whether the child understands the right and knows that he is waiving it by entering an admission." *In re Miller* (1997), 119 Ohio App.3d 52, 58, 694 N.E.2d 500, citing *State v. Ballard* (1981), 66 Ohio St.2d 473, 479, 423 N.E.2d 115.

{¶ 12}   The court held an adjudication hearing on February 21, 2001.   Before the court accepted Jeremiah's admission, the following colloquy took place:

{¶ 13}   "THE COURT:  Okay. Now, Jeremiah, nobody's forced you in any way to admit to this;  have they?

{¶ 14}   "THE JUVENILE:  No, sir.

{¶ 15}   "THE COURT:  Nobody's threatened you or anything like that?

{¶ 16}   "THE JUVENILE:  No, sir.

{¶ 17}   "THE COURT:  And you fully discussed it with your lawyer?

{¶ 18}   "THE JUVENILE:  Yes, sir.

{¶ 19}   "THE COURT:  And you're doing it of your own free will?   You're doing it voluntarily, in other words?

{¶ 20}   "THE JUVENILE:  Yes, sir.

{¶ 21}   "THE COURT:  Okay. Does he understand—all right.   All right. Okay. Okay, then, the Court accepts your admission * * *."   (Adjudicatory Hearing Tr. 6–7.)

{¶ 22}   From the above discussion it is clear that while the court ascertained that Jeremiah was entering his plea voluntarily, it failed to advise Jeremiah of the nature of the allegations against him, the consequences he faced, or the rights he was waiving. The court made no effort to inform Jeremiah that by entering an admission he waived the right to challenge witnesses and evidence against him, the right to remain silent, or the right to introduce evidence.

■   {¶ 23}   After the court accepted Jeremiah's admission it set the case for a dispositional hearing.   At the dispositional hearing the court attempted to correct its error in not complying with Juv.R. 29(D) at the adjudication hearing. Before proceeding with the disposition, the court called Jeremiah's attention to the adjudication hearing.   It asked Jeremiah whether he had entered his plea voluntarily, to which he responded "yes."  (Disposition Hearing Tr. 2.)  The court asked Jeremiah whether he had understood the charges that were against him, if he had gone over them with his lawyer, and if he understood the potential consequences of those charges, to which he responded "yes."  (Disposition Hearing Tr. 3.)   The court then advised him of the rights he had waived by entering the admission.  (Disposition Hearing Tr. 3–4.)

{¶ 24}   Despite the fact that the court attempted to remedy its mistake, it did not substantially comply with the mandates of Juv.R. 29(D).   Although the court asked Jeremiah if he understood the nature of the charges and whether he understood the consequences of the admission, it never personally advised Jeremiah of these charges and consequences.   In order to have demonstrated

substantial compliance with the mandates of Juv.R. 29(D), the court should have *explained* to Jeremiah the nature of charges against him and the potential penalties he faced. See *In re Orr* (Apr. 3, 2000), Tuscarawas App. No. 1999AP040032, 2000 WL 502692; *In re Jones* (Apr. 13, 2000), Gallia App. No. 99CA4, 2000 WL 387727; *In re Gilbert* (Mar. 29, 1999), Jefferson App. No. 96-JE-34, 1999 WL 182526. Furthermore, the court must advise a juvenile of his rights *before* accepting his admission. Juv.R. 29(D). At no point prior to accepting Jeremiah's admission did the court determine that he knew of the charges against him, the consequences he faced, or the rights he was waiving. Even though the court tried to remedy its mistake, its efforts can best be classified as "too little, too late."

{¶ 25} Accordingly, Jeremiah's assignment of error has merit.

{¶ 26} The state raises one assignment of error that provides additional support for vacating Jeremiah's plea. The state's assignment of error states:

{¶ 27} "The trial court committed plain error by accepting the a [sic] plea of admission to one count of aggravated robbery with a firearm specification by the juvenile, who was sixteen years of age at the time of the offense, when said offense is a Category II offense, as defined by O.R.C. 2151.26(A)(2)(a). Such an offense is a mandatory bindover offense, as defined by O.R.C. 2151.26(B)(4)(b)."

{¶ 28} The state asserts in its assignment of error that since Jeremiah committed a category two offense with a firearm while he was sixteen, the juvenile court should have transferred this case to the general division of the common pleas court. The state contends that the juvenile court was without jurisdiction to accept Jeremiah's admission because it was mandatory for the juvenile court to bind him over per R.C. 2151.26(B)(4)(b).

{¶ 29} The state raises this one assignment of error in its brief. The state never filed a notice of appeal. An appellee who wishes to raise an assignment of error not raised by the appellant must file a notice of cross-appeal within the time prescribed by App.R. 4. App.R. 3(C). Thus, we will not consider the state's assignment of error as such. However, even when not raised by either party, the issue of subject matter jurisdiction may be raised sua sponte by the court at any stage of the proceedings, including for the first time on appeal. *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 238, 358 N.E.2d 536, overruled on other grounds, *Manning v. Ohio State Library Bd.* (1991), 62 Ohio St.3d 24, 577 N.E.2d 650, paragraph one of the syllabus. Accordingly, we shall address the issue of the juvenile court's subject matter jurisdiction.

{¶ 30} The issue of a court's subject matter jurisdiction cannot be waived. A party's failure to challenge a court's subject matter jurisdiction cannot

be used, in effect, to bestow jurisdiction on a court where there is none. *State v. Wilson* (1995), 73 Ohio St.3d 40, 46, 652 N.E.2d 196.

{¶ 31} Juvenile courts have exclusive initial subject matter jurisdiction over any case involving a child alleged to be delinquent for having committed an act that would constitute a felony if committed by an adult. *State v. Golphin* (1998), 81 Ohio St.3d 543, 545, 692 N.E.2d 608. If a juvenile offender meets defined criteria, the juvenile court may, or in specific cases shall, transfer the case to the general division of the common pleas court. In specified situations, transfer to the general division is mandatory. R.C. 2151.26(B). One such mandatory transfer situation is where, as in this case, the juvenile is alleged to have used a firearm in commission of certain crimes. *State v. Hanning* (2000), 89 Ohio St.3d 86, 90, 728 N.E.2d 1059; R.C. 2151.26(B)(4)(b).

{¶ 32} Jeremiah was charged with and entered an admission to aggravated robbery in violation of R.C. 2911.01 and a firearm specification in violation of R.C. 2941.145 and R.C. 2151.355.

{¶ 33} R.C. 2151.26 governed the relinquishment of jurisdiction by the juvenile court when the court adjudicated Jeremiah delinquent and committed him to the Department of Youth Services.[1] It read:

{¶ 34} "(B) After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be an offense if committed by an adult, the court at a hearing shall transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense if the child was fourteen years of age or older at the time of the act charged, if there is probable cause to believe that the child committed the act charged, and if one or more of the following applies to the child or the act charged:

{¶ 35} "* * *

{¶ 36} "(4) The act charged is a category two offense, * * * the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply to the child:

{¶ 37} "* * *

{¶ 38} "(b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged." R.C. 2151.26(B)(4)(b).

---

1. R.C. 2152.10 and 2152.12 replaced R.C. 2151.26 on January 1, 2002. These sections amended R.C. 2151.26 but made no changes that affect the outcome of this case.

{¶ 39}   According to these provisions, the juvenile court should have conducted a hearing to determine whether it had jurisdiction to proceed or whether it was obligated to bind Jeremiah over to the general division of the common pleas court.   The statute explicitly states that the court, at a hearing, *shall* transfer the case if the case meets the enumerated conditions.   The conditions, as applicable in this case, are as follows:  (1) a complaint has been filed alleging that the child is a delinquent for committing an act that would be an offense if committed by an adult;  (2) there is probable cause to believe that the child committed the act charged;  (3) the act charged is a category two offense;  (4) the child was sixteen years of age or older at the time of the commission of the act charged;  (5) the child is alleged to have had a firearm on or about his person while committing the act charged.   R.C. 2151.26(B).

{¶ 40}   The complaint against Jeremiah alleged that he was delinquent for committing aggravated robbery with a firearm specification.   Aggravated robbery is a category two offense.   R.C. 2151.26(A)(2)(a).   The complaint stated that Jeremiah was sixteen years of age when he committed the act.   It also alleged that Jeremiah had a firearm on or about his person or under his control at the time.

{¶ 41}   Given these facts, the juvenile court was obligated to determine whether there was probable cause to believe that Jeremiah committed the aggravated robbery and, if so, to transfer the case to the general division of the common pleas court.   It appears that the juvenile court was without subject matter jurisdiction to accept Jeremiah's admission to the charges against him.   Had the state amended the charges against Jeremiah so that he was no longer charged with a category two offense with a firearm specification, then the juvenile court would have had jurisdiction to accept Jeremiah's admission.

{¶ 42}   For the reasons stated above, Jeremiah's adjudication is hereby reversed, and this case is remanded to the juvenile court for further proceedings according to law and consistent with this opinion.

Judgment reversed
and cause remanded.

VUKOVICH and WAITE, JJ., concur.